Good morning. Welcome to the Sixth Circuit. We have all had an opportunity to read your briefs and are eagerly anticipating your thoughtful arguments. So, please call the first case. Case number 1958-01, United States of America versus Pedro Silvestre-Gregorio. Oral argument not to exceed 15 minutes and to be shared by the appellant and amicus in 15 minutes for the appellee. Ms. Rust for the appellant. May it please the court. I'm Erin Rust. I'm here on behalf of the appellant, Mr. Silvestre-Gregorio. I'm splitting my time with the attorney for the amicus, Mr. Stephen Kang, who will be taking three minutes of my time. Then I will also reserve three minutes for rebuttal. In 1975, this court in Aguilera Enriquez held that even for adults, appointed counsel must be provided when necessary to adequately present the position. Meanwhile, the Supreme Court and the lower courts have consistently and repeatedly held that children are facing adversarial proceedings. In Miller versus Alabama, the Supreme Court held that due to weaknesses in understanding consequences and impulsivity, that children should be treated differently from adults during the sentencing phase. In Kent, the court held that children required extra protections in order for their case to be transferred from juvenile court to criminal court. And, of civil juvenile delinquency hearings. Had Silvestre-Gregorio, who was an unrepresented minor, received voluntary departure during his removal proceedings, or had he received asylum, he would not be subject to the felony of illegal re-entry. Is the asylum claim actually before us? I mean, he didn't press the asylum claim to the district court below, right? He did not press the asylum claim. Ordinarily, we would consider that forfeited, correct? He did. There was testimony regarding potential asylum in the district court, and I think this court can look to the broader circumstances of the hearing. Now, it is much clearer, both from the recording itself and from the testimony that came before the district judge during the criminal proceedings, that he would have And... But is voluntary departure, the way I read our case law, voluntary departure isn't even a liberty interest for purposes of due process clause. So how would you, if it's only voluntary departure, why does the due process clause even enter the field, if we've already held that discretionary decisions don't trigger any type of liberty interest in an individual? We are asserting two different due process violations that occurred. One of those is the absence of counsel, and had counsel been present, then counsel could have properly asked for and sought voluntary departure, and counsel could have at least explored an asylum claim. Isn't counsel the process that is due to protect the liberty interest? Don't you still have to show that you don't have a liberty interest to counsel, you have counsel to protect your liberty interest in something else? And I thought that something else was voluntary departure, but if our cases hold that discretionary decisions, like voluntary departure, don't trigger any type of liberty interest, then I would think that any right to counsel would just be kind of moot, in this case at least. Well, Your Honor, I think the liberty interest that we're talking about when we're looking at the right to counsel is broader than just the specific liberty interest to the specific question of voluntary departure. And of course, there is a circuit split on the question of whether or not discretionary relief qualifies. Now, in the case in Estrada and in Ashkey, what the court was talking about was whether or not an individual, or at least in Estrada, the court was looking at whether or not an individual had a right to be notified of discretionary relief. And I think that is a separate due process question, notification of rights to relief, versus the wholehearted requirement of asking a child to adequately research and discover any relief he might be eligible for, and then to evaluate whether seeking voluntary departure versus some other form of relief is in his best interest, and then to be able to adequately present that to an inherently intimidating court body. So it's your argument that you have a liberty interest in being informed of a right to voluntary departure in which you don't have a liberty interest? We've asserted two due process rights. One of them is the question of whether or not he had a right to be informed of his right to seek voluntary departure. We're raising that argument to split on that particular question. But it sounds like you agree that it's foreclosed by our president. I think this court would have to re-evaluate both, really the Estrada decision, and I think that this court could do that given inconsistencies with the Estrada decision and the Mendoza-Lopez Supreme Court case. But this court's not required to do that in order for Mr. Silvestre Gregorio to receive relief in this case, because the separate due process violation is that he was required to present his case without the assistance of counsel. And why that's particularly concerning here is that that prior removal proceeding is now an element of a later criminal charge. And I think that's where the real question comes in, is whether or not we can use a prior uncounseled removal of a juvenile as a foundational element of a later criminal conviction. In Mendoza-Lopez, the Supreme Court already highlighted its concerns with using administrative hearings as a necessary element in a later criminal conviction. It just seems somewhat somewhat strange to me that he would have a right to collaterally attack a denial of voluntary departure when the statute says that those types of discretionary decisions aren't even subject to judicial review in a petition for review context. The statute bars our jurisdiction from considering discretionary decisions like voluntary departure. So we wouldn't be able to consider it on direct review, but we somehow are able to consider it on when it's collaterally attacking the order of removal. That seems like there's a disconnect there in my mind. The important distinguishing factor is that in a 1326 conviction in the Mendoza-Lopez case was addressing the criminal consequences. It was addressing whether or not a prior removal order could be a conclusive element of a later criminal conviction. So I think that is a separate liberty interest that distinguishes the 1326 context from a direct appeal or a motion to reopen removal proceedings. As a liberty interest in this voluntary departure for purposes of collaterally attacking the order, would that suggest that the provision that deprives him of jurisdiction on direct review is itself unconstitutional? So is your point that the liberty interest is heightened because of the criminal context? Yes, Your Honor. I think this court can issue a holding that is specific to the 1326 context. So in this case, the use of the prior uncounseled removal, particularly where he would have qualified and could have qualified for voluntary departure, had he received voluntary departure, that would not qualify him for a felony conviction under 1326. So in this case where he's only had one prior removal proceeding that occurred when he was a juvenile and when he was uncounseled, that should not, under the Mendoza-Lopez Supreme Court case, be considered sufficient to qualify as a basis for felony criminal conviction. Counsel, I have kind of a technical question here. The removal hearing that we have in the record, that we have the recording of, was that a master calendar hearing or did it take place after the master calendar hearing? What was that thing that we can listen to? Your Honor, that's a question I don't have a specific answer for at the moment. Doesn't it matter? So your position seems to be that he was eligible for pre-conclusion relief if he had asked for it before the termination of the master, as I read the regs, before the termination of the master calendar hearing. The government says, well, no, he had to be able to prove ability to pay. That would be true if it were not a master calendar hearing. That's how, as I understand, so like knowing what this thing was seems kind of critical to the exhaustion question. My understanding of the, I see my time is My understanding of the distinction between the pre-conclusion voluntary departure and the post-conclusion voluntary departure is whether or not the individual has already been ordered, deported, or removed. And that once they've been ordered, deported, or removed, then they still have an opportunity to seek voluntary departure. So at this hearing, during the hearing, he had not yet been ordered removed and therefore he still could have sought voluntary departure at any time during the hearing. I see, so you think it impinges, the triggering point is, have you been ordered, deported, or removed? I believe that that is accurate and I can defer to amicus. He may have some additional insight on that particular fact. Thank you. Good morning, Your Honor. Stephen Kang for amici, and I'm here to address the specific question of whether the due process clause required the appointment of counsel for children facing removal, and Mr. Silvestri in particular. And I think I'm going to turn first to the core error that we think the district court made in this case, which is that the district court thought that because children have the capacity to make certain important decisions concerning their removal cases, like the right to waive a bond hearing in Reno v. Flores, for example, that they also have the ability to represent themselves in those cases. And we think that Indiana v. Edwards actually contradicts that very clearly, because what Indiana v. Edwards said is that you may have, when you're looking at competency to perform functions, you have to look at the specific competency at issue. And there's a very distinct difference between the competency to go forward with an attorney, like basic competency to go to self-represent, to represent yourself in complex proceedings before a judge and against a trained prosecutor. Okay, but Indiana v. Edwards involves somebody who is a paranoid schizophrenic. Right. So, and Justice Breyer was very clear to say that this does not, this right, or I guess right of the state to refuse. In fact, Indiana v. Edwards does not require the states to allow somebody with a severe mental illness to represent themselves. It just gives them the option, right, to deny them a Faretto right. So, I think you're spinning Indiana v. Edwards awfully hard, maybe to cases, so you're saying that the district court or the immigration judge would be required. Even Indiana v. Edwards doesn't go that far for paranoid schizophrenics. Well, I would disagree, Your Honor. I think what Indiana v. Edwards instruct is that there is a clear break between the two competencies required, between the competency required to stand trial and that to self-represent. And it describes the latter competencies as more complex and requiring a greater degree of judgment and skill and understanding than the very basic ability to go forward with a lawyer and to have some, which all that requires essentially is like a basic understanding of the proceedings. And in our view, that analysis is equally applicable to children. You know, older children, no one is disputing here, may have the ability to understand what's going on on their case in a basic level. And also, if they had an attorney, that attorney would be obligated to consult with the child to make sure that they understood the child's wishes and were able to effectuate them. But that's very different from the competency required to go forward without an attorney and to litigate your own removal case in the kinds of complex removal proceedings that issue here. Can I ask just a high-level question? I mean, it seems quite obvious to me that children have strong interests here, that there's a risk of deprivation. But when you got to the government's kind of analysis under Matthews v. Eldridge, there's only essentially one paragraph and nothing about what the cost would be of having counsel in all these cases under your Brightline rule. I guess I'm a little uncomfortable establishing a nationwide rule that counsel is required in all these cases without an adequate factual basis for even engaging in the Matthews v. Eldridge analysis. So I wonder if you could respond to that briefly, if okay. Sure, with permission. So I think the first thing we note, Your Honor, is that the government actually pays for its own lawyer in every single removal case. So every removal case involving a child already involves that initial government expenditure. Like a prosecutor appears at every removal hearing involving a child. And, you know, there's no doubt that it would require money to fund programs for counsel. There are also different potential remedial options for any court that would implement any kind of rule that this court establishes. Like, for example, just giving the child some additional time, or making that a requirement to give them additional time to find counsel. But there's no doubt. But I think all we're saying here is that the How would that work under your theory? If you give them additional time to find counsel, which they can't obtain for a variety of reasons, how does that take care of the problem? Well, I think what it would do is potentially alleviate, at minimum, the cost problem. Because it gives the child a meaningful opportunity to at least try to secure representation on their own without needing to resort to government resources. Which is a choice that many people make in the criminal context, too, for example. To pay for their own lawyers for their own reasons. But it's true that if what we are saying is that it would be unlawful to order a pro se child removed without at least providing them some information. Good morning. May it please the court. Bill Roach for the United States. The district court in this case rightly denied defendant's motion to dismiss because the defendant did not meet all three of the statutory prerequisites in section 1326 D. Now, defendant didn't attempt to prove the first two, exhaustion and waiver. But in any event here, defendant failed to show that the removal hearing... Do you think that it's an open question whether this circuit has required all three versus whether we should follow the Ninth Circuit and the Second Circuit, which I believe hold that if you satisfy the first one, you essentially satisfy the other two. Estrada has a line where it says you have to meet all three, but then it goes on and says we deny it on the third one. What's the government's position on whether that point is an open question in the circuit or whether we should adopt the Ninth and Second Circuit? It is not an open question in this circuit. This circuit has consistently required defendants in 1326 D proceedings challenging a previous removal order to show all three. Estrada... It's unclear to me that Estrada reached that as a holding. It certainly has a line in there readily. Right. It says all three, but then it says in this case we only talk about fundamental fairness and then denied it because you had no liberty interest in the discretionary relief that was sought. That's right. I think... Is there a case that talks about this in our case that I've found that goes through all three of the factors fully, but there is language in Estrada and other cases that say it is a burden on the defendant to show all three elements. The best argument on the other side that I thought was when Congress passed this 1326 D, it was essentially codifying the Supreme Court's decision and does Lopez. Yes. And Lopez seems to have an unknowing waiver of any appellate rights, then that can show a due process violation and we should interpret the three requirements in light of Mendoza. How would you respond to that? Well, I think Mendoza-Lopez was the case that gave way to Section 1326 D and obviously Congress I think that case is different because the government there conceded a due process violation. In other words, it invited the court to find a due process violation. So the court did not in Mendoza-Lopez say that a waiver on its own was fundamentally unfair or that judges failure to develop the record was fundamentally unfair insofar as it would be a fundamental defect in the proceedings. So Congress's best interpretation of that decision was 1326 D and as this court has recognized, a defendant does need to show all three. Now in this case, it doesn't particularly matter because the district court was correct that defendant failed to show that his removal hearing was fundamentally unfair. In other words, the defendant failed to identify a defect that would undermine the integrity of the proceedings. Judge Larson, to your question about the audio recording, that is in my view, that is an audio recording of the actual removal hearing. So it's not a master calendar hearing, it's nothing before the hearing. So at that point in the hearing, at the removal hearing, defendant was no longer eligible for pre-conclusion voluntary departure. At least that's that's my reading of the regulations. And if that's true, then the then the IJ was right when he said you have to have the ability to pay. That's correct. If it is not true, then the IJ was wrong when he said you have to have the ability to pay. Seems outcome determinative on the exhaustion prong, what the answer to this question is. Well, I disagree, Your Honor, respectfully. The statute 8 U.S.C. 1229 C mentions in the very first part of that subpart A, it mentions that a non-citizen and removal hearings must have a means to depart on their own. I think that's the language, a means to depart. I understand that I read that, and I thought, oh, well, that makes sense, except the BIA seems to have said otherwise. They seem to say it's reversible error for an immigration judge to require in a pre-conclusion hearing that you have, you demonstrate the ability to pay. So, I mean, we would have read the statute differently. That question doesn't seem to be before us, is what the BIA seems to say. It is. I agree with you that the regulations in the statute aren't entirely consistent on the pre-conclusion voluntary departure point. However, even if the judge erred on that point, it still wouldn't rise to the level of a fundamental defect enough to satisfy the fundamental fairness standard in 1326 because voluntary departure is not, it's a discretionary. So that might be right. I was just talking about with respect to whether he had exhausted. So, whether he had exhausted, you could expect him not to appeal if he had been affirmatively misinformed by the judge that there was an element that wasn't actually required. Right, right. So that could, okay, I see what you're saying on the exhaustion point, but in terms of... I was talking about exhaustion. Right, so in terms of the fundamental fairness point, even the eligibility for discretionary relief, the judge is not required to inform a non-citizen in removal proceedings of their eligibility for voluntary departure because it's a discretionary form of relief. And this court has held that on multiple occasions. The second, and I think defendant or appellant conceded the Estrada point, and one of two due process arguments they made. One was the notification eligibility of voluntary departure, and the second one was a due process right to counsel. Well, as this court has said before, the Sixth Amendment obviously does not apply in removal hearings. The Fifth Amendment does, and it guarantees a non-citizen in removal hearing a fair proceeding, which defendant had in this case. It does not entitle or guarantee the right to counsel. It may in certain situations, to make the proceedings fair, but that's not the case here. Defendant was fully informed of all of his rights. The judge read the notice of appear to the defendant, and it explained all of the charges using common everyday language. The judge also explained the defendant's right to appeal, also using common everyday language, not just technical language. It seems clear from the recording and also from some of the testimony at the evidentiary hearing that the interpretation was a defendant understood his rights at that hearing, was able to make decisions on his own. So this is not the type of case that would rise to a level where an attorney would have been necessary to give the the defendant a fair hearing. In Al Seica, speaking of a fair hearing, and this is the court's fifth amendment in removal hearings, the court says an alien has a right only to the opportunity to follow the proper procedures and to make his case before the immigration authorities. What he chooses to do with that is his own business, and his proceeding is fundamentally fair if the government gives him that opportunity. What do you make of the distinction between that case and this one? The fact that this case is a child, should we establish a different rule? No, your honor, because I think that that case speaks to the concept of fundamental unfairness with any litigant, and as long as the litigant is able to understand his or her rights, as long as they're able to understand the proceedings, as long as they're informed of their rights, and as long as they're given the opportunity to present their case, then that proceeding is going to be fundamentally fair. The Supreme Court has said children are different in other contexts, in the Eighth Amendment context and Miranda context, what is custodial. Why do you think that those precedents allow us to generically say children are different for purposes of the due process clause as well? Well, I don't think it has to be a generic determination. I think that the Fifth Amendment allows judges, and in particular immigration judges in this case, to look at the juvenile on a case-by-case basis. So obviously it would be different for a 16-year-old in this case from a two or three-year-old, a juvenile. So that's what due process allows. As the Supreme Court has said, due process is a flexible standard. So that allows judges the flexibility to make a case-by-case determination. And that's just another reason why a bright-line rule is not appropriate in this context, because judges do have that flexibility. Just like the court in Reno v. Flores in 1993, similar to this court's holding in El Seca, said that due process is satisfied by giving the detained alien juveniles the right to a hearing before an immigration judge. That is what the non-citizen defendant here had, a hearing before a judge. The judge, seemingly on the audio, was patient with the defendant, read the rights, explained the right to appeal, and attempted to fully develop the record, asked the defendant open-ended questions in an attempt to see whether he would qualify for voluntary departure. The judge found that because defendant did not have the ability to contact his parents and pay to depart on his own, that he was not eligible for voluntary departure. Defendant has not shown that that decision was error, and even if it was error, it wasn't a fundamental error that would have undermined the integrity of the proceedings. What do you think the, on due process, our cases consistently say you have to show some type of procedural violation or fundamental unfairness and then prejudice. How would you describe the prejudice standard? It seemed a little unclear to me. Would you analogize it to the Strickland prejudice standard, or would you say it's actually higher and you actually have to show essentially a different outcome would have been reached if counsel had been provided in this case, or if there hadn't been the fundamental unfairness in So two cases I think inform that decision, Your Honor. I think this court is trending more towards the Strickland reasonable probability standard. Mendoza Garcia talked about the more lenient probability standard and quoted the SOTO case out of this court's SOTO decision. Recently, after we filed the briefs, this court on January 10, 2010, decided CADA versus BARR, and that was in the context of an ineffective assistive counsel claim within the immigration context. So it's the, I think it's N. Ray Lozarum claim. It's not a Sixth Amendment claim, but it's a due process claim under the Fifth Amendment. The CADA court talked about the distinction in the prejudice standard, and it said that it was going to adopt a reasonable probability standard. So reasonable probability that but for the alleged error, the outcome of the proceeding would have been different. That standard is more lenient than an actual prejudice standard. However, in the immigration context, it's unclear whether a defendant in a 1326 proceeding would actually have to show that but for the error, he or she would have been able to remain in the country. So because other cases that have looked at discretionary relief in terms of cancellation of removal and suspension of deportation have held that for there to be a fundamental defect, the defendant would have had to show that they would have been able to remain in the United States. Here, irrespective of the decision on voluntary removal, defendant was going to be removed from the United States. It's also an open question whether someone who is removed from the United States, even voluntarily, can then be prosecuted for illegal re-entry. I haven't seen any cases that have decided that issue, but in the regulations, 8 CFR 1420.26d discusses that even if a defendant is allowed to voluntarily depart, that an alternate order of removal is also re-entered. I haven't done a lot of research into that and I haven't seen other courts address that, but I think that is an open question that someone who voluntarily departs and then comes back to the United States, I don't know whether that alternate order of removal is reinstated and that would allow for an illegal re-entry prosecution, but I think it just goes further to the fact that a denial of voluntary departure in no way can be... It's a liberty interest question. He doesn't have a liberty interest in it in the first place. Correct, correct. No liberty or no prejudice. That's right, Your Honor. That's right. I think even making an argument for a liberty interest in voluntary departure is weaker than a liberty interest in cancellation of removal or another discretionary form of relief that would actually allow the non-citizen to remain in the United States to where a denial of the relief or a granting of the relief would allow the non-citizen to remain in the United States and that's for obvious reasons the liberty interest would be greater in that situation. The court has no further questions. I'll conclude. Thank you very much. I'm going to start by just addressing the court's question with regard to the cost to the government and because this case is a 1326 case, this court can narrowly tailor its opinion to the specific context of later felony convictions based on a prior removal order, which would be a limited... It wouldn't necessarily require the government to pay for appointed counsel in every case. It would just be holding that when a child is deported or removed without counsel, that hearing cannot be the basis of a later felony conviction. I also wanted to address this prejudice question again. The case of Montanez- Gonzalez v. Holder, which I believe is a case out of the Ninth Circuit, does draw a distinction between a liberty interest based on receiving discretionary relief as a separate liberty interest from the right to a fair hearing. So the appointment of counsel or the presence of counsel is required in order for a child to adequately identify any defenses and present them. It also... If that's true, if the result of the proceeding would not have been different, or if there's not a... Let's use the Strickland standard. If there is not a reasonable probability that the result of the proceeding would not have been different, there's still no prejudice. If he had been appointed counsel, there's a reasonable probability that counsel would have asserted his request for voluntary departure at the appropriate time. The fact that Mr. Silvestre Gregorio may not have asserted it at a proper time is separate because had counsel been appointed, there's a reasonable probability that counsel would have known what to do and how to seek that proper relief. The government chose not to provide counsel to Mr. Silvestre Gregorio at his removal hearing, instead suggesting that a minor who does not speak, read, or write English, is not familiar with the American law, and has only ever received one year of education, should somehow discover his eligibility for different forms of relief, understand how different forms of relief interact... I'm sorry to interrupt you, but you're not making an as-applied claim for facial claim, right? It's a claim for all persons at all times, it's not just for Mr. Silvestre Gregorio, correct? Your Honor, I would certainly love a holding from this court that children are entitled to counsel during their deportation and removal proceedings at all times. However, the court doesn't have to reach that conclusion in order to rule in favor of Mr. Silvestre Gregorio here. First of all, the facts of this case indicate that he did not understand his would have reasonably related to, or reasonably would have caused, a different result in this case. And because this hearing is being used as an element for a later criminal conviction, the liberty interests at stake in this particular case are higher than they would be in a normal removal proceeding. Thank you, Your Honor. Thank you. Thank you.